UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| STEPHANIE L.V., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.  1:22-CV-00410-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Stephanie L.V.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 16) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a thirty-eight-year-old woman with a history of irritable bowel syndrome, Crohn's disease, fibromyalgia, anxiety, depression, and post-traumatic stress disorder.  AR 18. On October 22, 2018, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI") alleging a disability onset date of May 30, 2018.  AR 15.  The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On June 10, 2021, the claim went to a hearing before ALJ Wynne O'Brien-Persons.  *Id.*  At the hearing,

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner amended her alleged disability onset date to August 15, 2020. *Id.* On July 7, 2021, the ALJ issued a decision that was unfavorable to Petitioner. AR 15-28.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 3-8.

Having exhausted her administrative remedies, Petitioner filed this case. Petitioner raises four points of error. First, Petitioner contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about her diarrhea and fibromyalgia.[1] Pt.'s Br. at 6-13 (Dkt. 16). Second, Petitioner maintains that the ALJ improperly rejected the opinions of two treating providers, Nurse Practitioner Jessica Seick and Certified Physician Assistant Renee Wilson. *Id.* at 13-17. Third, Petitioner argues that the ALJ neglected to provide germane reasons for disregarding a letter written by her peer support specialist, Krystal Diaz. *Id.* at 17. Finally, Petitioner claims that the RFC is not supported by substantial evidence because the RFC and the body of the ALJ's analysis quote different numbers for the percentage of time Petitioner would be off task at work. *Id.* at 19-20.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

---

[1] Petitioner does not raise any challenge to the ALJ's adverse credibility findings about her mental health disorders. *See generally* Pt.'s Br. (Dkt. 16). Any such challenges have, consequently, been waived. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived).

**MEMORANDUM DECISION AND ORDER - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## **THE SEQUENTIAL PROCESS**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

**MEMORANDUM DECISION AND ORDER - 4**

impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: irritable bowel syndrome, Crohn's disease, ulcerative colitis, fibromyalgia, anxiety, depression, post-traumatic stress disorder, and somatoform disorder. AR 18. The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner can only occasionally interact with coworkers and members of the public and that Petitioner needs to be off task approximately 5% of an 8-hour workday and will be absent one day of work per month on average. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that these limitations would not prevent Petitioner from returning to her past work as a housekeeping cleaner. AR 26. In the alternative, the ALJ found that Petitioner could perform an alternative range of light jobs, including working as a laundry folder, garment sorter, and mail clerk. AR 27. The ALJ, therefore, found that Petitioner was not disabled. AR 28.

## DISCUSSION

I.    Petitioner's Symptom Testimony

Petitioner's first claim of error on appeal relates to the ALJ's rejection of her symptom testimony. Pt.'s Br. at 6-13 (Dkt. 16). Petitioner claims she is disabled because mental health issues, gastrointestinal distress, chronic fatigue, and pain keep her from functioning on bad days and necessitate regular absences from work. AR 57-58, 61, and 387-388.

When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must

**MEMORANDUM DECISION AND ORDER - 6**

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). Stated differently, "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Critically, the district court's role is to review, not redo, this work. If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ's decision does not clear this bar. While the ALJ provided an individualized assessment of Petitioner's testimony, the ALJ's reasons for discounting Petitioner's claims about her fibromyalgia are invalid under Ninth Circuit law.

a. Fibromyalgia

Fibromyalgia is a chronic pain disorder. Typical symptoms include "pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance." *Benecke v.*

**MEMORANDUM DECISION AND ORDER - 7**

*Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004).  Relevant here, "there are no laboratory tests to confirm the diagnosis;" fibromyalgia is generally assessed "on the basis of the patients' reports of pain and other symptoms."  *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).

This presents unique challenges for ALJs.  When evaluating the presence and impact of fibromyalgia, an ALJ cannot reject a claimant's testimony based on normal imaging, x-rays, and MRIs, or examinations showing normal muscle strength, tone, stability, and range of motion.  *Revels*, 874 F.3d at 666.  The Ninth Circuit has repeatedly warned that such results "are perfectly consistent with debilitating fibromyalgia."  *Id.*

The ALJ's decision runs afoul of this case law.  The ALJ agreed that Petitioner suffers from fibromyalgia and that it limits her ability to perform basic work activities.  AR 18 and 20 C.F.R. § 404.1522(a) (an impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities).  The ALJ, however, discounted the extent of Plaintiff's alleged pain and fibromyalgia-related limitations based on (i) her normal range of motion and full motor strength, (ii) normal gait, and (iii) imaging reports showing no "significant radiological issues of her musculoskeletal system."  AR 23.  In *Revels*, the Ninth Circuit found that such reasoning shows a "fundamental misunderstanding of fibromyalgia."  *Revels*, 874 F.3d at 662.

The holding of *Revels* applies here.  The ALJ improperly rejected Petitioner's allegations based on a perceived lack of "objective" medical evidence without considering the distinct characteristics of fibromyalgia.  *Id.*; *see also Timpone v. Kijakazi*, No. 18-55155, 2022 WL 1599128, at *1 (9th Cir. May 20, 2022) (unpublished) (the ALJ erred in rejecting medical opinions about a claimant's fibromyalgia based on the claimant's "normal neurological findings, full motor strength, normal gait, and lack of muscle atrophy"); *Harris v. Kijakazi*, No. 21-35136,

**MEMORANDUM DECISION AND ORDER - 8**

2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (unpublished) (the ALJ "did not adequately account for [the petitioner's] fibromyalgia when he "relied on medical records showing unremarkable physical findings, including normal motor strength, range of motion, gait, and coordination" to reject symptom testimony); *Smith v. Saul*, 820 F. App'x 582, 584 (9th Cir. 2020) (unpublished) ("the fact that [the petitioner] retained 'full range of motion' and 'muscle tone' and showed little 'objective evidence' of dysfunction [was] not a valid reason for discounting . . . symptom testimony" about fibromyalgia). [2]

This error was not harmless because the only other reason the ALJ provided for rejecting Petitioner's claim of being significantly limited by fibromyalgia – her activities of daily living – also lacks the power to convince.

b. *Activities of Daily Living*

The second reason the ALJ gave for rejecting Petitioner's testimony was her allegedly "robust" and "vast" activities of daily living. AR 22-23. Because Petitioner never submitted a written function report, however, and only testified about her daily activities in a cursory

---

[2] Respondent contends that this conclusion turns a diagnosis of fibromyalgia into a "free disability card." Res.'s Br. at 8 (Dkt. 21). The Court is sympathetic to Respondent's position and to the obstacles that ALJs face when assessing the functional impact of fibromyalgia. "Cases involving fibromyalgia always are tough. The disease is real but elusive, and [that] makes the task of the adjudicator particularly difficult." *Johnson-Tate v. Astrue*, No. CV 12-03784 RZ, 2013 WL 510088, at *1 (C.D. Cal. Feb. 11, 2013) (unpublished). The solution to this quandary, however, is not for ALJs to disregard *Revels*. Where a claim of fibromyalgia is at issue, it is incumbent on the ALJ to carefully develop the petitioner's subjective complaints and gather any evidence the ALJ needs to properly weigh the credibility of these statements, such as claimant and third-party function reports. Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *4-5 (explaining how the social security administration "evaluate[s] the severity and functional effects of a person's" fibromyalgia and promising that the administration "will make every reasonable effort to obtain available information that could help . . . assess the credibility of the person's" claims about her fibromyalgia).

**MEMORANDUM DECISION AND ORDER - 9**

manner, information about the nature and extent of Petitioner's activities is comparatively sparse. AR 458-557, 613-61.

The ALJ relied on the following activities to discount Petitioner's testimony: caring for her two children, aged 10 and 12, during the summers; spending summers in Arizona; driving a car; having a significant other; performing household chores; shopping in stores; using a computer; watching television; listening to music; reading; and helping her significant other on small construction jobs by bringing him items. AR 22.

Respondent acknowledges that the ALJ erred when he found that the ALJ spent summers in Arizona. Res.'s Br. at 6 n.4 (Dkt. 21). The medical record the ALJ cites for this fact states that Petitioner's children generally live in Arizona with their father, but spend their summers "up here" with Petitioner. AR 725.

The Court agrees with Petitioner that the remaining activities do not meaningfully conflict with Petitioner's symptom testimony. At the hearing in front of the ALJ, Petitioner described a typical day as follows:

> Waking up sometimes really early because I can't sleep. Just kind of working around the house, cleaning, just trying to keep things, you know, nice looking. There's days I just, I sometimes don't get out of bed because I just, I'm exhausted. And then, you know there's times I just, I sit on the couch and just isolate by myself.

AR 61. Petitioner explained that she does most her shopping by ordering online and picking up her groceries. AR 61. For entertainment, she listens to music, watches, movies, *tries* to read, and goes on drives with her boyfriend. AR 61-62. Finally, on good days, she will "try to go help" her boyfriend on small construction jobs by acting as his "gopher" and bringing him stuff. AR 62.

Calling these activities "robust" and "vast" stretches credulity. While daily activities, including household chores and childcare, can be a valid basis for rejecting fibromyalgia-related

**MEMORANDUM DECISION AND ORDER - 10**

symptom testimony, those activities must either (i) contradict specific portions of the claimant's allegations or (ii) meet the threshold of transferable work skills. *Orn v. Astrue, 495 F.3d 625*, 639 (9th Cir. 2007); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2011) (attending to her young children's needs six days a week from early in the morning until 10 p.m. at night and leaving the house daily for appointments, shopping, and other activities, including her son's soccer games, undermined the claimant's assertion of "totally disabling [fibromyalgia-related] pain.").

Here, the ALJ failed to identify any discrepancies between Petitioner's alleged symptoms and her reported activities. Nor is Petitioner's ability to do light chores on good days evidence of her ability to work full time. *See Revels*, 874 F.3d at 667-668 (where the claimant reported needing rest breaks and spacing out chores over different days, taking children to school, washing dishes, doing laundry, sweeping, mopping, vacuuming, going to the doctor, visiting family, cooking, shopping, getting gas, and feeding dogs did not conflict with her claims of debilitating fibromyalgia) and *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *2 (9th Cir. Dec. 27, 2022) (unpublished) (grocery shopping, cooking simple meals, watching television, and spending time with family, were "all consistent with [fibromyalgia-related] pain symptoms"). As the Ninth Circuit has repeatedly warned, pain "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

As in *Revels*, the ALJ improperly relied on Petitioner's ability to perform light chores on good days to reject her claims of disabling pain and fatigue.

**MEMORANDUM DECISION AND ORDER - 11**

    *c. Petitioner's Other Symptom Testimony*

The ALJ also rejected Petitioner's testimony regarding her diarrhea. Petitioner has identified at least one blatant error in this analysis. When discounting Petitioner's testimony, the ALJ wrote that Petitioner was "not currently taking medications to control her gastrointestinal flare-ups." AR 22. The ALJ cited to Petitioner's testimony and one medical record to support this claim. AR 22. Neither support the ALJ's reasoning.

First, Petitioner averred that none of the medications she was prescribed were effective in controlling flare-ups. She did not deny taking medication at the time of the hearing. AR 59-60.

Second, while the record indicates Petitioner was not taking medication for her Crohn's disease for a period, it clearly states that (i) she was not taking medication because she could not afford it and (ii) several months before the disability hearing, she obtained a referral to a gastroenterologist and started a trial of a new medication to treat her bowel diseases. AR 838, 898-899. The ALJ's disregard for these facts was erroneous. *See* SSR 16-3p, 2017 WL 5180304, at * 9 (October 25, 2017) ("We will not find an individual's symptoms inconsistent with [the frequency or extent of the treatment sought] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("Although [the Ninth Circuit has] held that an unexplained, or inadequately explained, failure to seek treatment ... can cast doubt on the sincerity of [a] claimant's pain testimony, [it has] proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.").

Because the Court is remanding, the Court need not address (i) whether this error was harmless or (ii) whether there is any merit in Petitioner's other challenges to the ALJ's refusal to

**MEMORANDUM DECISION AND ORDER - 12**

accept her claims about her diarrhea and gastrointestinal distress.  On remand, the ALJ has discretion to enter new findings regarding Petitioner's credibility consistent with this disposition.

    II.    <u>The Opinions of Nurse Practitioner Jessica Seick</u>

To support her claim of debilitating fibromyalgia, Petitioner submitted an opinion from her primary care provider, Nurse Practitioner ("NP") Jessica Seick.  AR 973-975.  On this form, NP Seick affirmed that Petitioner "is in constant pain and needs frequent rest which would impair her ability to hold down a normal job."  AR 975.  NP Seick estimated that Petitioner would be off work 20% of a normal workday due to pain and fatigue.  *Id.*

The ALJ rejected this opinion for the same reasons he rejected Petitioner's testimony about her fibromyalgia: the ALJ deemed NP Seick's opinion unsupported by "objective" medical evidence, inconsistent with her normal physical examination findings, and in tension with Petitioner's activities of daily living.  AR 26.  For the reasons already discussed, the ALJ's reasoning fails to account for fibromyalgia's "unique symptoms and diagnostic methods" as required by Ninth Circuit law.  *See Revels*, 874 F.3d at 662.

    III.    <u>The RFC</u>

The parties agree that there is a numerical discrepancy between the RFC and the body of the ALJ's decision.  In the RFC, the ALJ found that Petitioner would need to be off task approximately 5% of a normal workday.  AR 21.  The discussion portion of the decision, however, has a sentence saying Petitioner would need to be off task 15% of a normal workday.  Respondent makes a strong argument that this is a typographical error.  Normally, the Court would address whether the error was harmless before remanding.  *Ludwig*, 681 F.3d at 1053 (reversal on account of error is not "automatic," but requires a "case-specific" determination of

**MEMORANDUM DECISION AND ORDER - 13**

prejudice).  In this case, the Court is remanding on other grounds.  To resolve any potential ambiguity, therefore, the Court will order the ALJ to fix this discrepancy on remand.

   IV. <u>The Opinions of Certified Physician Assistant Renee Wilson and the Statement of Krystal Diaz</u>

Because the ALJ has the discretion to enter new findings on remand regarding the other medical opinions and the lay witness evidence, the Court does not address Petitioner's challenge to these portions of the ALJ's decision.

   V. <u>The Remedy</u>

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits.  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The proper course turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Id.* at 1100.  In most cases, however, remand for additional investigation or explanation is preferred.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).  Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

  Here, Petitioner alleges she is disabled due to a combination of conditions, including anxiety and depression.  AR 22.  Petitioner, however, only challenged the ALJ's credibility findings as they related to her gastrointestinal diseases and fibromyalgia.  Pt.'s Br. at 13-17 (Dkt. 16).  It remains uncertain whether the ALJ would be required to award Petitioner benefits if the errors in these findings are corrected.  Petitioner never completed a written function report and did not testify in detail about her fibromyalgia.  AR 43-62, 458-557, 613-61.  A more thorough parsing and evaluation of Petitioner's subjective symptoms may result in a finding that, even if

**MEMORANDUM DECISION AND ORDER - 14**

her claims about her fibromyalgia are credited, her pain is not so significant that it prevents her from working. *See* AR 56-58 (Petitioner testified that she stopped working because her Crohn's was "getting really bad" and she was having a lot of mental health issues). Such a finding would, in turn, provide a legitimate reason for discounting the opinions of NP Jessica Seick. The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule. On remand, the ALJ is directed to reevaluate Petitioner's credibility and the medical record consistent with this disposition.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 16) are **GRANTED**, and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: November 21, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**